[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10260

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RENZO WILLIAM ALEGRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cr-60041-RKA-1

_____

Before LUCK, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Renzo Alegre appeals his sentence of forty-eight months' imprisonment and twenty years' supervised release for possession of child pornography. He argues that his sentence is procedurally unreasonable because the district court failed to properly consider the 18 U.S.C. § 3553(a) factors, selected the sentence based on clearly erroneous facts, and failed to explain why it chose a twenty-year term of supervised release. He also argues that his sentence is substantively unreasonable because the court failed to afford consideration to relevant § 3553(a) factors due significant weight, improperly weighed its unfounded opinion on recidivism, and applied unreasonable supervised release conditions. Finally, he argues that his supervised release computer restriction is unconstitutional because it burdens substantially more speech than is necessary. For the reasons explained below, we affirm.

## I.

In July 2020, law enforcement officers working in an undercover capacity identified a computer on BitTorrent that was associated with a torrent file believed to contain files depicting the sexual exploitation of children. This investigation led to officers executing a search warrant at Alegre's residence, where the officers seized Alegre's desktop computer and cell phone after preliminary forensic examinations showed they contained more than 100 and

200 child pornography videos, respectively.  Alegre waived his *Miranda* rights and agreed to speak with law enforcement, to which he admitted that he was using the seized desktop computer to receive and download child pornography for the previous year.  Alegre, who was nineteen years old at the time, was subsequently arrested, and a federal grand jury indicted Alegre on one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

Alegre, without a plea agreement, pled guilty to the indictment.  At the change of plea hearing, the district court denied a motion Alegre filed to modify a bond condition that precluded him from maintaining an email account.  In doing so, the court stated that "the statistical evidence that [it had] reviewed" showed "that child pornography offenders recidivate at a higher rate than the general criminal population" and that, in its own experience, it had seen many child-pornography offenders reoffend while on release.

A probation officer prepared a Presentencing Investigation Report ("PSI") and calculated Alegre's guidelines sentence range based on the United States Sentencing Guidelines.  The PSI set a base offense level of 18 pursuant to U.S.S.G. § 2G2.2(a)(1).  Pursuant to U.S.S.G. § 2G2.2(b)(2), the PSI applied a two-level increase because the material Alegre possessed involved a prepubescent minor.  The PSI applied a two-level increase for Alegre knowingly engaging in distribution pursuant to U.S.S.G. § 2G2.2(b)(3)(F).  The PSI also applied a four-level increase pursuant to U.S.S.G. § 2G2.2(b)(4) because the offense involved material portraying

"sadistic or masochistic conduct or other depictions of violence" or "sexual abuse or exploitation of an infant or toddler." The PSI applied a two-level increase because the offense involved the use of a computer pursuant to U.S.S.G. § 2G2.2(b)(6). And because the offense involved 600 or more images, the PSI increased the offense level by 5 under U.S.S.G. § 2G2.2(b)(7)(D). The PSI decreased the offense level by 2 under U.S.S.G. § 3E1.1(a) because Alegre demonstrated acceptable of responsibility, and by an additional level pursuant to U.S.S.G. § 3E1.1(b) because he timely notified authorities of his intent to plead guilty. Overall, the resulting total adjusted offense level was 30.

The PSI assigned Alegre a criminal history category of I because he had zero criminal history points. The PSI calculated the imprisonment range for Alegre as 97 to 121 months, with a supervised release range of 5 years to life. As a special condition of supervised release, the PSI recommended that Alegre should not possess or use a computer except for authorized employment. And, in an addendum to the PSI, the probation office noted that the offense conduct "involved material that portrayed sadistic or masochistic conduct, as well as toddlers."

Alegre filed a motion for a downward variance, requesting a sentence of five years of probation with a special condition of one year of home detention "and all the recommended conditions of supervision contained in the [PSI]." Alegre noted that the United States Sentencing Commission had recommended that § 2G2.2 be revised to eliminate outdated enhancements. He also noted that

the Commission's 2021 Child Pornography Report found that the overall recidivism rate for non-production possession of child pornography was 27.6 percent.  In support of a downward variance, Alegre presented four cases from the Southern District of Florida where the district courts sentenced the defendants to terms of imprisonment significantly below their advisory guideline ranges.  He then argued that the facts of his case were virtually identical to those cases and his personal history and characteristics justified a downward variance.  And, in requesting a non-incarceration sentence, Alegre argued that the PSI's recommended conditions of supervised release, including the computer restrictions, promoted respect for the law and provided just punishment for the offense.  Alegre attached various documents in support of his motion, e.g., a speech impediment evaluation report, school transcripts, a psychological examination conducted by Dr. Michael Brannon, character letters, and a polygraph examination.

Alegre also objected to the two-level § 2G2.2(b)(3)(F) enhancement.  The government acknowledged it would not seek that enhancement because it would be unable to meet its burden of proof at sentencing.

In response to the downward variance request, the government agreed that a downward variance was appropriate given Alegre's documented mitigating circumstances but argued that a sentence that did not include imprisonment would not align with the § 3553(a) sentencing factors.  The government noted: that possession of child pornography was not a victimless crime; that Alegre

had made concerning statements to the police regarding being "addicted" to child pornography; that, despite telling Dr. Brannon he was not sexually attracted to prepubescent children, Alegre's collection of pornography gave rise to almost every sentencing enhancement that applied to the charge; that Dr. Brannon found Alegre's "judgment, problem-solving skills, and insight were good," suggesting he was aware of and understood his actions; and Alegre was knowledgeable about computers and software, given he was enrolled in college to pursue a degree in software engineering. Accordingly, the government requested a 48-month sentence of imprisonment followed by a "lengthy" term of supervised release.

At sentencing, Alegre called Dr. Brannon, who testified as follows. Alegre scored a 2 out of 7 on the Child Pornography Offender Risk Tool ("C-PORT") because he had two recidivism-risk factors: his age—offenders under 35 reoffend at a much higher rate—and his hebephiliac interest—arousal by material depicting prepubescent children. Offenders with any type of sexual offense (either child pornography or a touch offense) with any two recidivism risk factors reoffend within the next five years at a rate of about ten percent. There are no research studies showing that the number of images or videos, the content of those videos, or the age of the children increase the risk that an individual will reoffend. The C-PORT does not account for individuals who say they are addicted to child pornography, and Alegre's belief that he was unable to stop made him more of a risk for reoffending. However, Alegre was in treatment and was candid and forthright about his

presentation, which has a modest effect on reducing reoffending. But the younger an offender is, the more likely they are to reoffend.

In response to the district court's questioning, Dr. Brannon stated that the recidivism rates only account for those who are caught reoffending, and child pornography offenders are less likely to be caught because the offense is less likely to be detected than most other crimes. In response to the district court's question of whether extreme content would make a difference in whether a person is likely to commit antisocial crimes in the future, Dr. Brannon stated that "anyone who reaches to the extremes of behavior like sexual interactions with an infant we can expect to have more antisocial type of traits" and the "more you have extremes from the norm, the more concerned you become." But he stated there is no research showing that the age of the victim predicts any type of increase in reoffending, especially committing contact offenses.

Before determining Alegre's sentence, the district court stated it reviewed the PSI and its addenda, Dr. Brannon's report and testimony, Alegre's motion for a downward variance and his objections to the PSI, the government's response to Alegre's motion and objections, a letter on Alegre's treatment progress, and letters from his friends and family. The court sustained Alegre's objection to the two-level enhancement for distribution, resulting in an advisory guideline range of 78 to 97 months' imprisonment. Neither party objected further to the sentencing calculation.

The government recommended 48 months of incarceration, as a sentence of only probation and treatment would be wholly

insufficient.  The government argued that imprisonment was necessary to deter others, particularly for a defendant who had admitted to being addicted and unable to stop.  Alegre responded that his statement to the police, "I think it is too late," should not be interpreted as an admission he was unable to stop but, instead, as a reference to the fact he was caught.  He also argued that he was unlikely to reoffend because he had not violated his bond conditions and because he would continue to be supervised during his period of supervised release.  He also argued that the Guidelines were too stringent given his personal history and that Congress intended for some non-incarcerative sentences for possession of child pornography, given that there was no statutory minimum.

After statements from several of Alegre's family members, Alegre spoke to the court.  He stated that he "made bad decisions because of [his] lack of maturity and curiosity at 19 years old," but did not know that he was doing something illegal.   He also stated that he was sorry and ashamed and promised to never do it again.

The district court then stated it had considered all the parties' statements and the § 3553(a) factors.  First, it stated that it had considered the nature and severity of the offense and that the offense was extremely serious because of the continuous effect child pornography has on its victims and because Alegre had 244 videos and 4,000 photos, "the vast majority of which involved . . . bestiality

or sadomasochism or infants and penetration."[1]  The district court disagreed that Alegre did not deserve a prison sentence because it was his first offense and argued that, even with prison time, he would still have a second chance to finish college.

Second, the district court considered Alegre's history and individual characteristics.  The district court found that his youthful age supported an upward variance because Dr. Brannon testified that younger offenders are more likely to reoffend.  The court also found that Alegre's "too late" statement, in context, implied that he could not stop his addiction.  The district court noted that Alegre's lack of criminal history was already factored into the guideline range and was not "driving the penalties" that he was facing, and so, it did not support a downward variance.  And the district court found that varying downward based on his lack of criminal history would create unwarranted sentencing disparities with similarly situated defendants.  The district court found Alegre's compliance with bond conditions was an important factor that would "vary down" but explained it was not "an independent reason to vary down significantly in this case."  The district court stated that "the lower recidivism rate that the Guidelines and the C-PORT score ascribe to defendants like Mr. Alegre" is a "manifestation of the fact that this crime is committed alone" and unlikely to be brought to the attention of law enforcement.  As to the cases Alegre presented

---

[1] Although the PSI did not mention bestiality or infants, Alegre did not object to this characterization during sentencing nor on appeal.

as a comparison with his, the court stated that it would consider them for what they were "worth in that regard." The district court stated that his family members' letters did not justify a downward variance and that the effort Alegre put into his treatment would vary the sentence downward "slightly."

Third, the district court addressed the need to provide specific deterrence and to protect the community from further crimes of the defendant. The district court stated that it had concerns about recidivism rates for sex offenders as young as Alegre, his addiction, and his amassing of a huge collection of extremely disturbing material made it unsure that a non-incarcerative sentence, or even a below-range sentence, would protect the public.

The fourth and fifth factors that the district court considered were the need to provide general deterrence and the need to impose a sentence that provided just punishment and promoted respect for the law. Sixth, the district court considered the need to avoid unwarranted sentencing disparities, noting that "a non-incarcerative sentence especially would create unwarranted sentencing disparities" but that it was "not inclined' to impose a sentence of imprisonment higher than the sentence the government sought, even though the court found the appropriate sentence in this case was "probably 78 months."

As to Alegre's argument related to the Commission's comments on the current Guidelines, the district court noted that most federal judges continue to adhere to the Guidelines architecture, including the enhancements applied to Alegre and that it was not

clear if the Commission would ultimately decide the enhancements were inappropriate. And the court explained that the number of images and videos was an excellent predictor of whether Alegre would reoffend "when it comes to looking, if not touching," and that the "kinds of videos . . . demonstrate[d] a radical departure from societal norms that, again, [was] a good predictor of future conduct even if not for touching and only for looking."

The district court then imposed a sentence of 48 months' imprisonment to be followed by 20 years of supervised release, including the computer restriction recommended in the PSI. As to the computer restrictions, the sentence provided that Alegre could "not possess or use any computer; except that the defendant may, with the prior approval of the Court, use a computer in connection with authorized employment." Neither party made any further objections. This appeal ensued.

## II.

We "review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). But if a party does not raise a procedural sentencing argument before the district court, we review only for plain error. *United States v. McNair*, 605 F.3d 1152, 1222 (11th Cir. 2010). Under plain error review, we may exercise our discretion to correct an error when the defendant demonstrates: (1) an error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the error affected the defendant's substantial rights. *Rosales-Mireles v. United*

*States*, 138 S. Ct. 1897, 1904–05 (2018). To satisfy the third condition, a defendant ordinarily must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Id.* (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). If those three conditions are met, we will correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1905.

In reviewing the reasonableness of a sentence, we first consider whether the district court committed a procedural error, such as failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the sentence. *Gall*, 552 U.S. at 51. The district court must "make an individualized assessment based on the facts presented." *Id.* at 50. It may base its factual findings on, among other things, facts admitted in the defendant's guilty plea, undisputed statements in the presentence investigation report, or evidence presented at the sentencing hearing. Fed. R. Crim. P. 32(i)(3)(A); *see United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009).

If the sentence is of the kind and within the range recommended by the Guidelines, and that range exceeds 24 months, the district court must state in open court the reasons for imposing that sentence at a particular point within the range. 18 U.S.C. § 3553(c)(1). When a defendant fails to properly object to a district court's failure to comply with 18 U.S.C. § 3553(c)(1), we still review that challenge *de novo*. *United States v. Bonilla*, 463 F.3d 1176, 1181 (11th Cir. 2006).

Pursuant to § 3553(a), the district court must impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with any needed correctional treatment or training. 18 U.S.C. § 3553(a)(2). The district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the kinds of sentence and sentencing range established by the applicable Sentencing Guidelines provision, any pertinent policy statement issued by the Sentencing Commission, and the need to avoid sentencing disparities between similarly situated defendants. *Id.* § 3553(a)(1), (3)–(7).

The district court also must "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). However, it need not state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each factor. *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013). Instead, an acknowledgment by the district court that it considered the § 3553(a) factors is sufficient. *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007).

A defendant's argument that he should be granted a downward variance based on a challenge to the Guidelines themselves is a "non-starter." *United States v. Carpenter*, 803 F.3d 1224, 1235

(11th Cir. 2015).  Although Sentencing Commission reports have concluded that the current Sentencing Guidelines for possession of child pornography warrant revision, they do not "render the non-production child pornography guidelines in § 2G2.2 invalid or illegitimate."  *United States v. Cubero*, 754 F.3d 888, 898, 900 (11th Cir. 2014).  Those reports also do "not alter the district court's duties to calculate the advisory guidelines range" nor "require the district court to vary from the . . . guidelines range."  *Id.* at 900.

Here, Alegre has failed to show that his sentence is procedurally unreasonable.  Because Alegre did not object to the sentencing procedure below, we review for plain error.  *See McNair*, 605 F.3d at 1222.  And the district court did not plainly err in considering the § 3353(a) factors because it conducted an individualized assessment and walked through a detailed and exhaustive explanation of each factor.  Nor do we find any error in the district court's consideration of Alegre's lack of criminal history or of sentencing disparities.

Additionally, Alegre has not shown plain error in the district court's fact-finding, as the findings of fact he challenges on appeal are supported by the record.  Further, the district court's thorough discussion of the § 3353(a) factors was more than sufficient to explain the term of supervised release.  Accordingly, we affirm as to this issue.

**III.**

We review the substantive reasonableness of a sentence under a deferential abuse of discretion standard. *Gall*, 552 U.S. at 51. The district court abuses its discretion if it "(1) fails to afford consideration to relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)). We will vacate a sentence "if, but only if, 'we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *Id.* at 1190 (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

A district court's careful consideration of the § 3553(a) factors is not unreasonable simply because the defendant disagrees with the court's assessment of those factors. *United States v. Valnor*, 451 F.3d 744, 752 (11th Cir. 2006). We do not apply a presumption of reasonableness to sentences within the guideline range, but we ordinarily expect such a sentence to be reasonable. *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014). A sentence imposed well below the statutory maximum is an indicator of a reasonable sentence. *Id.*

Alegre has failed to show that his sentence is substantively unreasonable. Although the district court was not swayed by all of Alegre's mitigating arguments, it thoroughly considered them,

along with the § 3553(a) factors.  Additionally, the court's consideration of Alegre's recidivism risk was not improper because it was supported by Dr. Brannon's testimony.  Further, the twenty-year term of supervised release was well below the lifetime statutory maximum, especially considering Alegre's young age, and thus indicates the term's reasonableness.  *See Stanley*, 739 F.3d at 656.  We therefore affirm as to this issue.

## IV.

We ordinarily review questions of constitutional law *de novo*.  *United States v. Whatley*, 719 F.3d 1206, 1213 (11th Cir. 2013).  However, objections or arguments that are not raised at the district court are reviewed for plain error.  *United States v. Peters*, 403 F.3d 1263, 1270 (11th Cir. 2005) (reviewing a challenge to the constitutionality of a statute of conviction for plain error).  But we will not review an argument, even for plain error, when the party invited the error that he complains of on appeal.  *See Carpenter*, 803 F.3d at 1236–37 (holding that invited error precluded review of a defendant's challenge to a lifetime of supervised release because he affirmatively argued in favor of it in the district court proceedings).

"A district court does not commit plain error by imposing a computer restriction as a special condition of supervised release, even if the term of supervised release is life."  *United States v. Bobal*, 981 F.3d 971, 976 (11th Cir. 2020) (concluding that the condition of supervised release that prohibited the defendant from using a computer except for work and with prior permission of the

22-10260                Opinion of the Court                        17

district court was not plainly unconstitutional), *cert. denied*, 141 S.
Ct. 2742 (2021).

Here, Alegre invited the district court's ruling when he af-
firmatively requested and argued for his computer restriction in re-
questing a sentence of non-imprisonment.  But even reviewing for
plain error, his claim fails, as it is precluded by our decision in
*Bobal*.  Accordingly, we affirm as to this issue.

## V.

For all these reasons, we affirm the district court's sentence.

**AFFIRMED.**